IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLA R. BEAMS,

                Plaintiff,                    OPINION AND ORDER

v.                                                    22-cv-467-wmc

LELAND DUDEK,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

    Plaintiff Carla Beams seeks judicial review of a final decision of defendant Leland Dudek, Acting Commissioner of the Social Security Administration, finding that she was not disabled within the meaning of the Social Security Act. On appeal, Beams maintains that the ALJ failed to account for two, material limitations in formulating her residual functional capacity ("RFC"): (1) her mental health limitations, particularly as to social interactions and concentration, persistence and pace ("CPP"); and (2) her physical limitations as to handling, fingering, lifting and carrying. The court agrees that the ALJ's treatment of Beams' mental health limitations was flawed, so the Acting Commissioner's denial of benefits will be reversed and remanded for further proceedings consistent with this opinion.

BACKGROUND[1]

    Beams applied for disability benefits in April 2020, identifying bipolar disorder, major neurological cognitive decline, unspecific schizoid personality disorder, somatization, and general anxiety as medical conditions that limited her ability to work.

---

[1] Citations are to the administrative record. (Dkts. ##9, 9-1.)

(AR 215, 259.)   She claimed an onset date of January 1, 2017, when she was 55 years old. (AR 215.)

After a hearing, the ALJ issued a decision unfavorable to Beams (AR 16-29), despite finding that she had the following severe impairments: post-traumatic stress disorder ("PTSD"), depression and bi-polar disorder II, mild neurocognitive disorder, personality disorder, lumbar spine disorder, multiple trigger fingers, stable left arm lymphedema, and a hand tremor. (AR 19.)  Ultimately, this was because the ALJ concluded that Beams retained the RFC to perform medium work that required her to frequently reach in all directions, as well as handle or finger. (AR 21.) As to mental impairments, the ALJ limited Beams to understanding, remembering, or carrying out only simple instructions and routine, repetitive tasks in a work environment with few (if any) changes in work duties or expectations. (*Id.*) The ALJ further concluded that she was limited to workplaces with no fast-paced production quota or rate, only occasional interaction with the public, co-workers, or supervisors, and no direct customer service. (*Id.*)

In support of his decision, the ALJ summarized Beams' medical history. At a June 2017 health screening, Beams reported that she had recently retired from military service, noting that she had PTSD, bipolar disorder, and involuntary leg jerking. (AR 734.) In September 2017, after Beams complained of impaired balance, coordination, and memory, she also underwent neuropsychological testing, revealing mild balance issues and possible attention issues, but mostly normal memory, motor strength, and sensation. (AR 352-55.)

In March 2018, Beams' neuropsychological assessment showed mild neurocognitive disorder with deficits in sustained attention, initial verbal learning of unstructured

information and initial visual learning. (AR 825.) However, her examination also showed "significant psychological distress" and "hypersensitivity" in interacting with others and worrying that other people disliked her. (AR 825-26.) At her May 2018 medication management appointment, she reported "doing pretty well" (AR 637), but by September 2018, she reported feeling anxious, hopeless, helpless, worthless and sad. (AR 601.) In October 2019, Beams' provider adjusted her medication after she complained of "mental fog" (AR 559), and by January 2020, she reported feeling "a lot better," noting that she had energy and went to the gym, walked four miles daily, and volunteered with the local historical committee. (AR 529.) In October 2020, Beams reported that things were again "overall" going well. (AR 1161.) And by September 2021, she reported that she was doing "really good now" (AR 1423), causing her psychiatrist to note in October 2021 that she was "subjectively improved." (AR 1403-05.)

As to Beams' physical conditions, following breast cancer surgeries in 2001 and 2002 (AR 362), she had suffered from left arm lymphedema (swelling caused by a buildup of lymph fluid in the body between the skin and muscle) that caused her discomfort. (AR 406.) Next, Beams underwent left middle finger release surgery in July 2018 (AR 347), and she reported doing well at a follow-up appointment. (AR 346.) Finally, Beams had a neurological examination in March 2022 for hand tremors, and the neurologist noted that she had "diffuse essential and postural tremor" but no generalized slowness of movement. (AR 1445-46.)

The ALJ also considered the state psychologist consultants' opinions, finding Dr. Jason Kocina's opinion partially persuasive, and noting that the functional limitations for

concentration, persistence, or pace and interactions were accounted for in the RFC. (AR 26.) However, the ALJ found state agency psychologist Jason Orosz's opinion "not persuasive overall" because his proposed social interaction limitations -- infrequent interaction with the public and superficial interactions with supervisors -- were not just unsupported but contradicted by the evidence. (*Id.*) In particular, the ALJ pointed to Beams reporting meaningful relationships with family, presenting well to and cooperating with providers, and volunteering, adding that the medical evidence as a whole did not support limiting her to superficial interactions. (*Id.*) Finally, the ALJ found that Dr. Orosz had overstated Beams' CPP limitations. (AR 26-27.)

## OPINION

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration adopted and quotation marks omitted). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). While "the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination," *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), the court will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Plaintiff argues that the ALJ did not support his conclusions with substantial evidence in the following three areas.

I. Mental Limitations

Plaintiff argues that the ALJ erred in several ways in crafting an RFC to account for her mental limitations. *First*, plaintiff argues that the ALJ did not account for Dr. Orosz's opinion that she would be able to interact appropriately with supervisors at a "superficial level." (AR 136.) In doing so, plaintiff acknowledges that the ALJ limited her to "occasional interactions with the public, co-workers, or supervisors," and precluded her from "direct customer service." However, the ALJ cited no specific *medical* evidence supporting his conclusion that plaintiff was not limited to "superficial" interactions with supervisors. (AR 26.) Instead, it appears that the ALJ "impermissibly 'played doctor' and reached his own independent medical conclusion" about her ability to interact with supervisors. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). Similarly, the non-medical evidence that the ALJ relied on to conclude that she was not limited to superficial interactions -- good family relationships, cooperative behavior during doctor's appointments and part-time volunteer work -- did not necessarily translate into plaintiff being able to maintain full-time employment requiring more in-depth social interaction. *See Felicia M. v. Saul*, 2020 WL 5763632, at *7 (N.D. Ill. Sept. 28, 2020) ("the ALJ did not explain how cooperative or polite behavior, or even good familial relationships, translate into a greater ability to socially interact with others"); *but see Justin v. Kijakazi*, No. 20-CV-1066-WMC, 2022 WL 2302210, at *4 (W.D. Wis. June 27, 2022) ("no fault in the ALJ's reliance, in part, on medical records noting that [plaintiff] was "friendly and cooperative" during appointments"). Regardless, plaintiff rightly points out that the ALJ

5

cited no evidence that she had "meaningful relationships" with family and ignored the non-social nature of her volunteering. (AR 26.)

In response, defendant argues that Dr. Kocina concluded plaintiff was able to get along with supervisors and co-workers, and she could accept criticism with only occasional, minor difficulties. (AR 126.) However, the ALJ only found Dr. Kocina's opinion partially persuasive, and while the ALJ wrote that he accounted for plaintiff's interaction limits in the RFC, it is not at all clear to what extent the ALJ credited Dr. Kocina's opinions as to social interactions. Since this court's "review is limited . . . to the ALJ's rationales," it may "not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)). Finally, Dr. Kocina's opinion was not necessarily inconsistent with a "superficial" interaction limitation, as he also opined that plaintiff would have "difficulties being around other people for extended periods of time." (AR 126.)

Next, citing *Reynolds v. Kijakazi*, 25 F.4th 470, 474-75 (7th Cir. 2022), defendant argues that any distinction between "occasional" and "superficial" interactions may not matter for the RFC analysis. However, in *Reynolds*, there was *no* medical evidence that Reynolds should receive a "superficial" interaction limitation. *Id.* at 473-74. Here, by contrast, Dr. Orosz expressly concluded that plaintiff would "be able to interact appropriately with supervisors at a superficial level." (AR 136.) And, as this court has explained, "'occasional' refers to the *quantity* of time spent with individuals, while 'superficial' refers to the *quality* of the interactions." *Mattson v. Kijakazi*, No. 21-CV-428-WMC, 2022 WL 1597818, at *4 (W.D. Wis. May 20, 2022) (emphasis added). Thus,

6

"[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Id.* (quotation marks omitted).

*Second*, plaintiff argues that since the ALJ did not find what the underlying causes were for her CPP problems, his conclusion that no production quotas or rates would resolve those problems was unsupported. Drs. Kocina and Orosz opined that she had moderate limitations in working in coordination with or in proximity to other people and noted that she "may have rare periods of decreased concentration when working with others due to her thoughts that people are talking about her and laughing at her." (AR 125, 135.) In fairness, defendant points out that Drs. Kocina and Orosz only opined that she *"may"* have such periods, further noting that they were *"rare."* See *Ellison v. Kijakazi*, No. 21-CV-821-SCD, 2022 WL 4463903, at *9 (E.D. Wis. Sept. 26, 2022) ("The qualifier 'could' undercuts the proposition that the RFC *absolutely required* additional persistence and pace limitations."), *aff'd*, No. 22-3134, 2023 WL 8794989 (7th Cir. Dec. 20, 2023). Still, the ALJ found that plaintiff had CPP limitations (AR 20, 26), and then failed to build a logical bridge between plaintiff's CPP limitations and limiting her to a work environment with no fast-paced production quota or rate, especially when her CPP problems were apparently related to working near other people. See *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas

7

or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.").[2]

Accordingly, the court agrees with plaintiff that the ALJ failed to adequately consider plaintiff's difficulty with in-depth social interactions and CPP limitations, or at the very least, failed to build a logical bridge between those limitations and his limiting plaintiff to "occasional" interactions with the public, co-workers, and supervisors or to work with no fast-paced production quota or rate in the RFC.

## II. Physical Health

Because the ALJ's treatment of plaintiff's mental limitations warrants remand, the court will only briefly discuss plaintiff's less-compelling arguments about the ALJ's treatment of her physical limitations. Plaintiff faults the ALJ for not explaining the basis for finding that she was capable of medium work, particularly given her reported issues with lifting, grip strength, finger pain, and fine motor skills. To be sure, this court may have determined that a more restricted RFC was appropriate *if* it were considering the evidence *de novo*, but the court will not reweigh the evidence or substitute its judgment for the ALJ's so long as substantial evidence supports his conclusion. *Gedatus*, 994 F.3d at 900. Here, substantial evidence does just that, including full motor strength with no sign of weakness in arms, normal tone, intact sensation, normal finger-to-nose test, and tremor while doing certain activities, but with normal finger taps and no slowness of movement.

---

[2] Given her memory problems, plaintiff also asserts that the ALJ failed to limit her to tasks with a certain number of steps, but defendant fairly points out that plaintiff does not identify any medical opinion supporting such a limitation, much less how many steps would be too many.

Moreover, the non-medical evidence also supports the ALJ's RFC, at least to the extent that plaintiff herself reported working out and doing household chores. Most importantly, no doctor suggested greater restrictions were necessary than those the ALJ adopted in plaintiff's RFC relying on the state medical consultants conclusions that she had no severe, physical impairment and was capable of medium work. (AR 121, 136); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Finally, while plaintiff asserts that the ALJ created an evidentiary gap by finding the state medical consultants' opinions unpersuasive, the ALJ pointed to sufficient other evidence to support a medium work RFC as already discussed above.

**III. Nonmedical Evidence**

Relatedly, plaintiff would fault the ALJ for relying only on objective evidence. However, the ALJ also considered nonmedical evidence. For example, the ALJ explained that he did not place "great weight" on her reported ability to perform activities of daily living given that federal courts cautioned such tasks do not necessarily indicate an ability to maintain full-time employment (AR 24-25). *E.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (failure to recognize differences between activities in daily living and a full-time job "is a recurrent, and deplorable, feature" of ALJs' opinions).

For all of these reasons, the court will remand for the ALJ to provide a logical bridge between plaintiff's recognized interaction and CPP limitations and the corresponding limitations in her RFC.

ORDER

IT IS ORDERED that:

1) The decision of defendant Leland Dudek, Acting Commissioner of Social Security, denying plaintiff Carla Beams' application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2) The clerk of court is directed to enter judgment in plaintiff's favor and close this case.

Entered this 1st day of April, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge